## Saylor v. Saylor

(Decided January 24, 1913.)

### Appeal from Magoffin Circuit Court.

1.   Wills—Contracts—Title    Bond—Action    on—*Res   Adjudicata.*—A judgment sustaining a will is not conclusive of the right of one of the contestants to recover, on a title bond claimed to have been executed by the testator, land devised by the will.

2.   Witnesses—Evidence—Competency—Section    606,    Sub-section    2, Civil Code.—Under sub-section 2 of section 606, Civil Code, a party cannot testify for himself with reference to transactions had with a party who is dead at the time the testimony is given.

3.   Evidence—Incompetency—Waiver of Objection by Cross-Examination.—The right to object to incompetent testimony is not waived by cross-examination.

4. Finding of Chancellor—Title Bond—Evidence.—In an action on a title bond, containing a of *non est factum* evidence examined, and held to sustain a finding of the chancellor in favor of the defendant.

BYRD, HOWARD & NICKELL, for appellant.

D. D. SUBLETT, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Martin Saylor owned a tract of land on Oil Springs Fork of Little Paint Creek in Breathitt County, Kentucky, which he had purchased from Thomas Crace and Ben Caudill in the year 1882. He had several children and grandchildren. On August 11, 1908, Martin Saylor and his wife, Margarett Saylor, conveyed the above tract of land to his son, Garfield Saylor, in consideration of certain payments to be made by Garfield to the grantors' children, and in further consideration of an agreement on the part of Garfield to support and maintain the grantors so long as they lived. A few days previous to the execution of this deed, and on July 18, 1908, Martin Saylor made a will, by which he made certain bequests to certain of his children, and devised the same land to his son Garfield. The will contains the following provision: "I, Martin Saylor, do will Henry Saylor $110 which he owed me for borrowed money." Martin Saylor died in the year 1909. His will was offered for probate on November 22, 1909. Henry Saylor and others objected to its probate. The will was probated, and on appeal by Henry Saylor and others to the Breathitt Circuit Court the jury found in favor of the will, and judgment was entered accordingly.

After the will had been sustained, plaintiff, Henry Saylor, brought this action against Garfield Saylor and the other heirs of Martin Saylor to recover a half interest in the land in controvercy, basing his cause of action on the following title bond:

"This bond of conveyance made and entered this August 13th, 1904. Martin Saylor of Magoffin County, party of the first part, and Henry Saylor, party of the second part, of same County and State.

"The said Martin Saylor, for and in consideration of the sum of Seven Hundred and Fifty ($750.00) Dollars, for his part of the land that he helped to pay for purchased from Ben Caudill, lying and being on Little

Paint, and bounded as follows, beginning on a beech tree at the lower end of a farm running with the conditional line, between Ben Saylor, and Martin Saylor, to Jim Rice line, up the ridge to John Pace line, with said line to Taylor Bailey's, with the ridge to Elish Jackson's line, with the ridge to Ben Saylors line, with said line to the beginning.

"Said Martin Saylor, this day binds himself to make a lawful title, if fails to do so binds himself to pay Henry, Saylor, Seven hundred and fifty ($750.00) Dollars.

his<br>
"Martin X Saylor,"<br>
mark

"Witness.

his<br>
"James X Blanton," "Margaret Saylor."<br>
mark

The defendant, Garfield Saylor, being the only real party in interest, is the only defendant who made defense. He interposed a plea of *res adjudicata,* based on the judgment of the Breathitt Circuit Court sustaining Martin Saylor's will, and also a plea of *non est factum.* On final hearing the chancellor gave judgment in favor of defendant, and plaintiff appeals.

Manifestly, the plea of *res adjudicata* is not available as a defense. In the will contest the only question determined, or that could have been determined, was will or no will. Henry Saylor's right to one-half of the land in controversy was not litigated, and could not have been litigated, in the will contest. That being true, the judgment sustaining the will is not conclusive of Henry Saylor's right to recover the land under and by virtue of the title bond. It therefore becomes necessary to consider the plea of *non est factum.*

As plaintiff, Henry Saylor, testified for himself, and his evidence consists of transactions had and statements made by his father, who was dead at the time plaintiff testified, it follows that Henry Saylor's evidence is incompetent and cannot be considered. Section 606, Subsection 2, Civil Code. The fact that defendant's attorneys cross-examined plaintiff on these matters did not render plaintiff's testimony competent. A party has the right not only to object to testimony on the ground of its inadmissibility or the incompetency of the witness, but to cross-examine a witness with reference to such in-

competent matter, and does not waive his right to object to incompetent testimony by reason of such cross-examination. If the rule were otherwise, a party would often be deprived of the right of cross-examination in cases where he and the court differed as to the competency of the evidence.

The only portion of Henry Saylor's testimony that is competent is his statement that he paid on the land in controversy the sum of $100 to Ben Caudill and to Anderson Blanton a horse valued at $125.

James Blanton, whose name appears on the bond as an attesting witness, testified that there was a bond given. He could not remember whether he had given leave for his name to be signed to the bond or not. Frank Blanton was by. He heard the old man say he aimed for Henry to have his part of the land. The bond was written about six or seven years ago at Martin Saylor's house. Did not know and could not recollect who wrote the bond. It seems like it was read in his hearing. When Martin Saylor made the statement in regard to Henry, Martin was at home sick. Did not know anything about what was in the bond. Frank Blanton testified that he could not read or write. He was at Martin Saylor's, and they wrote something and said it was a bond. James Blanton was present and someone else, he did not know who. It had been six or seven years ago. Margarett Saylor wrote the bond.

The defendant, Garfield Saylor, testified that he never heard of the bond until after the judgment in the will contest. His father lived with him all the time. Witness was at home nearly all the time. His sister Margarett Saylor did not spell her name "Margarett Saylor," but Margaret Sailor." On cross-examination, it developed that this witness was away from home at different times.

It will be observed that neither Frank nor James Blanton identified the bond in controversy as the bond which they claim to have seen executed. Indeed, neither one of them testifies that Martin Saylor was even present or that he authorized his name to be signed to it. James does not remember who wrote the bond. He does not remember whether he authorized his name to be signed as attesting witness or not. Neither one of these witnesses could tell what was in the bond. Indeed, their evidence is very vague and unsatisfactory. Aside from the unsatisfactory character of the evidence by which

it is attempted to prove the execution of the bond, it appears from the will of Martin Saylor that the plaintiff, Henry Saylor, was indebted to him in the sum of $110, which sum he devised to Henry Saylor as his part of the estate. It does not seem probable that Martin Saylor would have executed a title bond acknowledging an indebtedness of $750, when, as a matter of fact, Henry Saylor was at that time indebted to him. Nor does it seem probable that Martin Saylor would have canveyed or devised the land to his son Garfield and directed the latter to pay Henry the sum of $110 if, as a matter of fact, he had previously executed the title bond. Another circumstance that must be taken into consideration is this: Plaintiff never undertook to enforce this bond during the lifetime of his father and Margarett Saylor. He waited until both were dead. Even upon the death of his father he did not first institute suit on the title bond, but sought to break his father's will, when if the will had been broken his part of the estate would not have been as large as that portion which he could have recovered if the title bond had been valid. He first contests the will, and when defeated in that action, he sues on the title bond, when a person with an eye to his own interest would have naturally sued first on the title bond itself. In view of these most potent facts, and of the unsatisfactory character of the evidence by which it is sought to establish the execution of the bond in question, we see no reason to disturb the finding of the chancellor in favor of the defendant.

Judgment affirmed.